ALBANY,
August, 1809.

Bunn
v.
Riker.

BUNN *against* RIKER.

At common law, an action for a wager is maintainable; but a wager which is against the principles of sound policy, is void, and cannot be recovered.

THIS cause came before the court, on a writ of error, from the common pleas of the city of *New-York.*

*Riker,* the defendant in error, brought an action of *assumpsit,* against *Bunn,* the plaintiff in error, in the court below. The declaration contained three counts. The first count was on the following receipt, or memorandum, in writing.

"*New-York,* 30th *April,* 1807.

"Received of *Joseph Graham,* and *Samuel Riker,* jun, 100 dollars each; which sums I promise to pay to Mr. *Graham,* in case *Morgan Lewis,* shall be re-elected governor of this state, or to Mr. *Riker,* in case *Daniel D. Tompkins* shall be elected to the said office, at the said election.

"JOHN BUNN."

The plaintiff averred, that the said *D. D. Tompkins,* was elected governor of this state, at the said election, by reason whereof, &c. the defendant became liable, &c. and being so liable, in consideration thereof, assumed to pay, &c. The second count, was for money had and received to the use of the plaintiff. The third count, was on an *insimul computasset.*

At the trial of the cause, a *bill of exceptions* was tendered, which stated, that the plaintiff gave in evidence the receipt above mentioned. A witness then proved, that after the general election for a governor was closed, he called on *Bunn*, with the receipt, and demanded payment of the 200 dollars; who answered, that *Graham* had not yet paid him the sum, mentioned in the receipt; but that he would soon see *Graham*, and whether he obtained the money of him, or not, he would pay the sums mentioned in the receipt, to the defendant in error.

*John Woodworth*, the late attorney-general, who was also examined as a witness, testified, that he was one of the canvassers of the votes for the governor, given at the late election; and that the proceedings of the canvassers, and the result of the said election, and canvass, were duly entered in a book, in the office of the secretary of state, in the manner prescribed by law; that as appeared by the said canvass, *Daniel D. Tompkins* was elected governor of the state of *New-York*, at the last election; and that the returns of the votes given at the said election were destroyed.

The counsel for the plaintiff in error, objected to this testimony, so far as related to the result of the election or canvass; but the same was, notwithstanding, admitted by the court below.

It appeared also, that both *Graham* and *Riker*, were electors, qualified to vote for governor, and that *Riker* had voted on the day preceding the giving of the receipt by *Bunn*. *Graham* resided in the *middle* district, out of the southern district, in which the othei party resided.

*James Cheetham*, who was a printer to the state, was also produced, as a witness, and testified, that the certificate of the canvass of the last election, was published in a certain newspaper, called the *Albany Register*;

printed at *Albany ;* and that he was instructed, by a note from the canvassers, to copy this certificate from that paper, into his own paper, printed in the city of *New-York,* which he accordingly did. He produced one of his papers containing the same certificate, which declared that *Daniel D. Tompkins* had been elected governor of this state, at the said election.

This testimony was also objected to by the counsel of the plaintiff in error, but admitted by the court below. The counsel for the plaintiff below, then produced a commission to *John Parkes,* a notary public, under the great seal of the state of *New-York,* tested in the name of *Daniel D. Tompkins,* as governor, and signed by him ; and also a *supersedeas* to the assistant justices of the peace, in the city of *New-York,* sealed, tested and signed in the same manner, both of them dated on the 1st *July,* 1807 ; these papers were objected to, but admitted by the court.

The counsel for the plaintiff below then insisted, that the said election was a matter of public notoriety, which the court and jury were bound to take notice of ; this was denied and objected to by the counsel on the other side ; but was allowed by the court to be sufficient evidence.

*Hopkins,* for the plaintiff in error. 1. The first and most important question, arising on the assignment of errors, in this cause, is whether the plaintiff can sustain an action for the wager ; or whether this court will sit to decide on every idle bet between parties, which can have no relation to the administration of justice ; above all, in a case of a wager between qualified electors, pending an election.

* 1 *Term Rep.* 56.

In the case of *Allen* v. *Hearne,** the court of K. B. in *England,* decided that a wager, between two voters,

with respect to the event of an election of a member for parliament, before the poll began, was illegal.

Wagers of this nature are against morality and sound policy; and if they have not been countenanced by the courts of *Great Britain*, there are stronger reasons for not allowing them in this country, where elections are more frequent, and more free; and where every means ought, therefore, to be used, to maintain them pure. Such wagers operate as a bribe, and influence the party, by the strongest motives of pecuniary interest, not only to vote for the particular candidate, but to endeavour to influence others to vote for the same person; all freedom of choice, or of action, is destroyed. The evils of party spirit will be greatly increased, if, in actions on wagers, the question is to be investigated, and decided in this court, whether a person, declared by the canvassers to be elected, has been duly elected, or whether there is a governor *de jure*, or *de facto*; for although the certificate of the canvassers is conclusive, as to the person who is to act as governor, it is only *prima facie* evidence, in an action of this kind, and the party may go into evidence, to show that the canvass was not correct, or was illegal. Canvassers may corruptly declare a person to have been elected as governor, who has not been, in truth, duly elected. Thus a wide field of litigation may be opened; a jury may find, that the governor elect, or *de facto*, has not been duly or legally elected, but that another person is the legal governor, by a majority of the votes of the electors; and great discontents may be created, and disturbances raised among the people. Indeed, the evils which may arise from countenancing actions for such wagers, are too obvious to escape the attention of the court.

But I put the broad question; will this court support actions for wagers of any description?* I place out

ALBANY,
August, 1809.

Bunn
v.
Riker.

* 2 *Mass. Rep.*
5. *Amory* v. *Gilman.*

of view, as standing on a totally different ground, those fictitious wagers, or feigned issues, devised for the more perfect administration of justice ; where the object is not to recover any wager, but to ascertain the truth of facts, in controversy between the parties.

The *English* courts have, in some instances, allowed actions for wagers ; yet several of their most enlightened judges have been of opinion, that it would have been better for the public, if the courts had originally determined, that no action, to enforce the payment of a wager, should be permitted ; and that in no case ought it to be permitted, where it would be contrary to the principles of *morality* or sound policy.*

* *Cases temp.
Hardw.* 239.
*Cowp.* 729. 2
*Term Rep.* 615.
3 *Term Rep.* 697.
704. 2 *H. Bl.* 44.
† 2 *Term Rep.*
710. *Comb.* 425.

In *Atherfold* v. *Beard*,† the court refused to support an action for an idle wager, which might draw into discussion a matter of *public* interest and importance ; as a wager respecting the future amount of a branch of the public revenue. *Buller*, J. considered Ld. *Mansfield* as being of opinion, that any wager, as to a *public* event, would be void. And the same learned judge, in the case of *Good* v. *Elliott*,‡ though he admitted and regretted, that actions for wagers had been, in some cases, permitted, was of opinion, that no action could be maintained for a wager, concerning the *private transactions*, or *interests* of a *third* person.

‡ 3 *Term Rep.*
693. *Cowp.* 735.

There does not appear to have been any decision in *England*, before the year 1776, that a mere idle bet, or wager, could be recovered in a court of law. This court are not, therefore, tied down by any authority ; and it would be a matter of regret, if they were bound to follow precedent, in this case, against principle.

Again, this wager is illegal, and void, under " the act to prevent horse-racing, and for other purposes." The 5th section of that act, declares, " that all, and every contract for, or on account of any gaming, by lot or chance, of any kind, or under any description whatever,

shall be deemed, and adjudged void in law." A wager or bet is gaming. A bet on the throw of a *gamester*, is as much gaming as to throw the die. Who is to be elected governor, is a matter of chance; it is gaming by lot or chance, or playing for money, that the statute is intended to prevent.

2. The first count in the declaration in this case is bad. It is on the paper, or memorandum, as a specialty, or as if it were a promissory note. A writing not sealed, is a *parol* agreement. The writing may be evidence; but in a declaration you must aver the fact, not state the evidence. Again, there is no averment, that the money was ever deposited in the hands of the defendant. There is no ground or consideration for a promise, or liability on the part of the defendant.

An action of *indebitatus assumpsit*, will not lie for a wager, or money won at play.*

3. The evidence given in the cause below, was inadmissible, and ought to have been rejected. Mr. *Woodworth*, one of the canvassers, testified, that the canvass, or result of the election, was in writing, and filed in the office of the secretary of state. There was, then, a higher species of evidence, which ought to have been produced. But the testimony of this witness, is mere parol evidence, of a matter of record. The same objection may be made to the paper printed by Mr. *Cheetham*, for it is not the highest evidence, to wit, the record of the canvass, in the secretary's office.

Again, the court below decided, that the result of the election, was a matter of public notoriety, of which all the world was bound to take notice ; but when, and how is this to be a matter of such public notoriety, as to be evidence to all the world ? There may be a great division of public opinion, on this subject, between the two great political parties.

ALBANY,
August, 1809.

Bunn
v.
Riker.

* 3 *Salk.* 13. 1 Ld. *Raym.* 69. *Carth.* 338.

*R. Riker* contra. Whether an action for a wager can be maintained in any case, is a question not necessary now to be discussed, since such actions have been sanctioned by a series of decisions, in the *English* courts, from the reign of *Charles* II. to the present time. The case of *Andrews* v. *Hearne*,* was an action of *assumpsit* for a wager, whether *Charles* II. would be king of *England*, within twelve months. No objection was made against the action in that case. And *Jones* v. *Randall*,† decided in the year 1774, was an action sustained in the court of K. B. for a wager, whether a decree of the court of chancery, would be reversed in the house of lords. Lord *Mansfield*, and the rest of the court, were clearly of opinion that such an action would lie, unless it was against good morals, or sound policy. In the case of the *Earl* of *March* v. *Pigot*,‡ the parties bet on the lives of their respective fathers, yet no objection was made to the action. In the case of *Good* v. *Elliott*, Grose, J. said, that actions for wagers had been innumerable, and that what Lord *Mansfield* said, in *Da Costa* v. *Jones*,§ was decisive, that wagers were not void, *quia* wagers ; *Ashhurst*, J. and Lord *Kenyon*, were of the same opinion. The rule, as resulting from all the decisions, seems to be, that a wager is good, and recoverable, unless by injuring a third person, it may disturb the peace of society, or militates against the morality, or sound policy of the country.

In the case of *Allen* v. *Hearne*,¶ the bet was laid, before the poll had opened. In the present case, *Riker* had voted, and *Graham* could not vote out of his district.

But even admitting the contract to be illegal, this illegality cannot be set up by the defendant, who is a mere stake-holder, or receiver of money to the use of the plaintiff.**

2. The declaration states the facts as they existed. It sets forth the receipt. In a declaration, on a policy of

* 1 *Lev.* 33. S. C. 1 *Keb.*.56. 65.

† *Cowp.* 37.

‡ 5 *Burr.* 2802.

§ *Cowp.* 729.

¶ 1 *Term Rep.* 56.

** 1 *Bos. & Pull.* 3. 5 *Term Rep.* 405. 7 *Term Rep.* 535. 8 *Term Rep.* 575.

insurance, which is an unsealed instrument, it is the invariable practice, to set forth the policy, and aver the loss, and that by reason thereof, the defendant became liable. So you may declare on a promissory note not negotiable under the statute.

ALBANY,
August, 1809.

Bunn
v.
Riker.

3. The act for regulating elections,* makes it the duty of the secretary of state, in conjunction with the comptroller and treasurer, to ascertain the result of the election, after the transcripts of the poll-books, are returned by the clerks of the several towns, and counties. And they are directed, without delay, to make out a certificate of their determination, to be entered in a book in the secretary's office, and to cause it to be published in one, or more of the public papers, printed in each of the great senatorial districts. The printer in the southern district, who was a witness in the court below, testified, that he published this certificate, by direction of the canvassers. This may be considered as an *Act of State*, of which the state gazette is sufficient evidence. In the case of the *King* v. *Holt*,† it was decided, that the gazette was evidence of the king's proclamation, and of an address to the king, or of articles of war. On an indictment for adhering to the enemies of the king, public notoriety is sufficient evidence to a jury of the fact, whether there was war or not.‡ So on an indictment, for the murder of a constable, or other public officer, proof that he was, *in fact*, such officer, is sufficient, without producing his commission.

* 24 Sess. c. 61. s. 9. 11.

† 5 *Term Rep.* 436. *Peake's Law Ev.* 80, 81. 4 *Hawk. P. C.* 460.

‡ *Foster, Disc.* 1. c. 2. s. 12.

In the circuit court of the *United States*, the *exequatur* of a *British* consul has been admitted, as evidence of the fact that he was consul.

*Hopkins*, in reply. The defendant, being a stakeholder, stands in the place of the parties ; and may make the same defence as *Graham* himself could have done, had the plaintiff brought his action against him. Until

\* 5 *Term Rep.*
495.
† *Evans's Es.*63.

the money is paid over, either party may bring an action against the stake-holder, to recover the money deposited;\* and he is subject to the same obligations, and entitled to the same defences, as the parties themselves.†

Public notoriety, cannot be sufficient evidence of the person who is governor. There may be a *governor de facto*, and a *governor de jure*. The certificate of the canvassers, is the proper, and indispensable evidence of the person elected. The *exequatur* of a consul is the best evidence, because it is issued by the government; and is the instrument by which it acknowledges the person to be a consul.

VAN NESS, J. The counsel for the plaintiff in error, denies, that, at common law, any wager is recoverable, wherein the parties have no other interest than that which they create by the wager itself. It is now too late to draw this point into discussion. The law appears to be settled, that some wagers form the proper ground of an action. It is worthy of remark, however, that as often as this question has been raised, there is scarcely a judge in *England*, from the time of the case of *Da Costa* v. *Jones*, down to the present day, who has not expressed his regret that such was the law.

But that there is a class of wagers, to the recovery of which the law will not lend its aid, is conceded; and it, therefore, becomes necessary to inquire, whether the present wager belongs to that class.

It was held in the case of *Jones* v. *Randall*, (*Cowp.* 37.) and *Da Costa* v. *Jones*, (*Cowp.* 729.) and in several of the more recent cases, cited on the argument, that wagers against the principles of sound policy are void. I consider this to be emphatically a wager of that description. It may involve an inquiry into the validity of the election of the present chief magistrate.

The counsel for the defendant in error insisted, that the certificate of the canvassers is made conclusive, by the statute, on this point. But is their certificate conclusive in every case? Suppose one of the canvassers should count the votes, and the rest certify the result? Or, suppose it could be made to appear that their certificate was obtained by bribery, would it, notwithstanding, be conclusive? Whether the certificate, when made, pursuant to the act, is decisive as to the election; and whether a case may not occur, when it might be considered as a nullity, or as constituting the person in whose favour it is made, merely the governor, *de facto*, are points which it is not my intention even to discuss, much less to decide.

We all recollect, that on one occasion, different opinions were entertained and expressed with respect to them. They are questions, which, perhaps, no existing tribunal is competent to decide, should they unfortunately again arise. It is enough, that this wager may give birth to such a question, to pronounce it to be repugnant to the dictates of good policy. The discussion to which it gives rise, ought to be discouraged, unless the public good, or the due administration of justice, renders it unavoidable. It is a discussion calculated to endanger the peace and tranquillity of a community, already sufficiently heated and agitated. In the case of *Atherfold* v. *Beard*, (2 *Term Rep.* 610.) it was held, that a wager respecting the future amount of any branch of the public revenue was illegal, because it leads to an improper discussion, and is contrary to sound policy.

The case in which the court of *King's Bench* has gone the greatest length, in supporting a wager, is that of *Jones* v. *Randall*. I have always considered that a very strange decision; and there is some reason to believe, that Lord *Mansfield* regretted that he had determined it, as he did. I infer this from what afterwards fell from him, in the case of

*Da Costa* v. *Jones.* " Never," says he, when the case of *Jones* v. *Randall* was cited, " was a question more doubtful, how it would be decided, till it was actually determined."

A wager, between two voters, with respect to the event of an election of a member of parliament, laid before the poll began, was decided to be illegal, on the ground that it was corrupt, and against the fundamental principles of the *British* constitution ; that it was a gaming contract, not to be encouraged, and of a dangerous tendency. (*Allen* v. *Hearne,* 1 *Term Rep.* 56.) If for such reasons, a bet of this description, was considered to be void in *England,* how much is their force increased, when applied to an analogous case in our own country, in which the very existence of every department of the government, depends upon the free, and unbiassed exercise of the elective franchise. There can be no doubt, I think, that if this wager comes within the spirit of the last mentioned case, that it is void.

What are the facts, as stated in the record ? The parties here are electors ; *Riker* had already voted, but *Graham* had not ; the bet was made on the last day of the election, in the city of *New-York,* and *Graham* resided in the middle district. I understood the defendant's counsel to admit, that if *Graham* could have given his vote, that the judgment below must be reversed. Now it is for the defendant in error to show, that *Graham* was at such a distance from the town, in which he resided, and where only, I agree, he was entitled to vote, as to preclude the possibility of his getting there, before the close of the poll. Nothing more is said about *Graham's* place of residence, than that it was in the middle district. For aught that appears, the bet might have been made in the morning ; the court knows that the county of *Rockland* is in the middle district ; and there could be no difficulty in *Graham's* going to almost any town in

that county, in season to give his vote. It is hardly expected that the court will intend any thing in support of such a contract as this; but without intending a great deal more than appears upon the record, *Graham* might have voted, had he been so disposed. For these reasons, I am of opinion that this wager is void.

I could have wished that the court had been prepared to decide, whether the act of the 19th *March*, 1802, does not make all wagers illegal; I am strongly inclined to think it does. I do not, at present, however, mean to express any opinion, on the construction of that act.

From the record it appears, the defendant in error has obtained judgment for the whole amount deposited in the hands of the stake-holders; hence it is not necessary to determine, whether the defendant can recover back his own deposit.

I am of opinion, that the judgment below must be reversed.

KENT, Ch. J. and YATES, J. were of the same opinion.

SPENCER, J. The objection to the first count is, that it is not alleged that, in point of fact, the defendant received the money acknowledged in the memorandum to have been received; and that as the memorandum is not a note within the statute, it ought to have been averred, that the money was received by the defendant. The case of *Lansing* v. *M'Killip* decides, that written agreements, not within the statute, can only be enforced on the ground of a consideration, and that the acknowledgment of value received, would not be evidence of a consideration, but that the kind and nature of the consideration ought to be shown. The authority of that case is extremely weakened, if not en-

ALBANY,
August, 1809.

Bunn
v.
Riker.

* 3 *Johns. Rep.*
484.

† 3 *Salk.* 176.
1 *Bos. & Pull.*
3.

‡ 3 *Term Rep.*
693.

§ *Cowp.* 729.

tirely overruled by the case of *Jackson* v. *Alexander*.* If, however, the case of *Lansing* v. *M'Killip*, is still to be considered as law, there is this difference between it and the present case ; the precise consideration is confessed by the defendant, in the memorandum ; and the only reason, which required an averment of the real consideration, where value was admitted to be received, was, that the court might judge whether, in reality, the consideration was such as to uphold the promise. The first count, then, seems to me to be free from objection, on the ground of consideration. The next objection is, that under the second count the facts stated in the bill of exceptions, could not be given in evidence, on the principle, that *indebitatus assumpsit* will not lie on a wager. It does not appear to be clearly settled that an *indebitatus assumpsit* will not lie on a wager ; but it is settled, that it will lie against the stake-holder.† These observations dispose of the formal objections.

The second question involves a very important inquiry, though I cannot perceive that it is a difficult one. It has been contended, that all wagers are unlawful at common law. After the very able, and I think unanswerable opinions of Lord *Kenyon*, Justice *Ashhurst*, and Justice *Grose*, given in the case of *Good* v. *Elliott*,‡ which was a wager upon the fact, whether one *Susannah Tye*, had or had not, before a certain day, bought a certain waggon, I cannot think it necessary to enter upon the discussion of the question ; Lord *Kenyon* says, and cites a variety of cases in his support, that from the earliest times, the books all speak the same language. Lord *Mansfield* says, in the case of *Da Costa* v. *Jones*,§ that " indifferent wagers upon indifferent matters, without interest to either of the parties, are allowed by the law of this country, so far as they have not been restrained by particular acts of parliament ; and the restraints imposed in particular cases, support the general

rule." Indeed, it appears to me impossible to read the argument of the judges, in the case of *Good* v. *Elliott*, and examine the authorities they cite, without yielding to the position they maintain, that a wager upon an indifferent subject, is recoverable in courts of law. There are, undoubtedly, limitations to the rule, that wagers are lawful; wagers inciting to a breach of the peace, or to immorality, or which affect the feelings or interests of a third person, or expose him to ridicule, or libel him, and also wagers against sound policy, are illegal. Under those of the last description, may be classed the case of *Allen* v. *Hearne*,* which was a wager between two electors, before the poll began, on the election of the candidates, for whom they were partisans, and in which they had taken decided parts, on opposite sides. This was decided, on very sound principles, to be void, as being corrupt, in the eye of the law, and against the fundamental principles of the constitution, which required that the election of members of parliament should be free, and that every voter should be exempt from pecuniary interest in giving his vote, which could not be the case, when the electors were under a pecuniary influence. The present case is a bet on the election of the executive magistrate; and were the parties situated as they were in the case of *Allen* v. *Hearne*, most undoubtedly the bet could not be recoverable. But here *Riker* had already voted, and was, therefore, free from any influence the bet could have; and from the facts in the case, it appears, that *Graham*, though qualified to vote, and though he had not voted, could not be influenced by the bet, because it was morally impossible for him to vote; for the statute regulating elections allows him to vote only in the town or ward wherein he resides; and the bet was laid in the city of *New-York*, and *Graham* resided in the middle district.

The counsel for the plaintiff in error very candidly admitted, that from the situation of *Graham*, he could not vote,

ALBANY,
August, 1809.

Bunn
v.
Riker.

* 1 *Term Rep.* 56.

and therefore could not, so far, be influenced in his conduct, as an elector. But the verdict of the jury, has, I think, settled this point; it was a matter of fact, peculiarly within their cognisance, whether *Graham* could vote at that election; by finding for the plaintiff below, they have virtually passed on that fact, and decided that he could not. I will not intend, that the court below and the jury have disregarded the law on that point; after a verdict, every reasonable intendment should be made to support it.

It was, however, contended, that bets of this kind, may produce an inquiry into the decision of the canvassers, and may involve the country in confusion. This argument, I think, cannot be maintained, since the statute renders the decision of the canvassers conclusive and final; thus excluding all inquiry into the purity and propriety of their decisions, as effectually as the law excludes such inquiry into the judgments of courts. The bet then is reduced to this, that the decision of the canvassers, certifying the one or the other candidates to be elected, decides the event, on which the wager was laid. The present wager, in my opinion, is by no means so alarming, as one upon the administration of the laws; and yet in the case of *Jones* v. *Randall*,[*] which was a wager of 50 guineas, whether a decree of the court of chancery would be reversed, on appeal to the house of lords, it was held by the whole court of king's bench, that the wager was neither against law, nor sound policy. Under the circumstances of this case, I cannot perceive that the wager can be objected to, on either of those grounds.

It has been urged, that the 5th section of the statute to prevent horse-racing, and for other purposes, operates to render all wagers illegal; it enacts, " *that all and every contract thereafter to be made, and entered into,* for or on account of any sum or sums of money,

[*] *Cowp* 37.

or other thing, bet or staked, or depending on any such race or races as aforesaid, or concerning the same, or for or on account of any gaming by lot or chance, of any kind, or under any description whatever, shall be deemed and adjudged void in law." &c.

I apprehend, that under the terms gaming by lot or chance, betting on a contingent event cannot be included. Betting on an event does not, in common parlance, mean gaming. By the statute of 9 *Anne*, c. 14. from which our statute to prevent excessive and deceitful gaming, is, in substance, taken, all notes &c. given or executed by any person, where the whole or any part of the consideration shall be for any money, won by playing at any game whatsoever, are declared to be void. The same statute enacts, that every person who shall at any time, or sitting, by playing at any game, lose in the whole, the sum of 25 dollars, and shall pay it, he may sue and recover it back of the winner. Now, if betting on a contingent event be gaming, the persons betting, undoubtedly, by the act of betting, play at that game, and consequently betting upon any event, would be brought within the statute of *Anne*, and our statute to prevent excessive and deceitful gaming, an idea which, I presume, never has been entertained ; for in *England*,* actions have been sustained on wagers in a variety of instances, since the statute of *Anne*, and this objection was never thought of, though the bets exceeded the sum of 10*l.* the sum beyond which, money lost by gaming, might be recovered back. I conclude, therefore, that the gaming mentioned in the 5th section of the statute to prevent horse-racing, must be some play of lot or chance, and that betting upon an indifferent subject, without any playing, never can be comprehended within the statute.

In the case of *Good* v. *Elliott*, *Grose*, J. denies that wagers are void, as gaming contracts. Lord *Mansfield*, in the case of *Da Costa* v. *Jones*, says, " whether it would not

* 5 *Burr.* 2863.
*Cowp.* 37.

have been better policy to have treated all wagers, originally, as gaming contracts, and to have held them void, is now too late to discuss; they have too long, and too often been held good and valid contracts."

The evidence of the fact, that *Daniel D. Tompkins* was elected governor in 1807, appears to have been full; the defendant's confession, and promise to pay the amount of the note, after he had seen *Graham*, were alone sufficient to warrant the jury in drawing the inference, that he admitted the bet to have been lost; but I perceive no objection to the evidence given by one of the canvassers. He stated, that by the canvass, Mr. *Tompkins* was declared to be governor. Though the exemplification of the certificate might have been higher evidence, still the fact was shown sufficiently, and no inference could be raised against the defendant in error, in not producing the higher evidence.

In my opinion, the judgment ought to be affirmed.

THOMPSON, J. not having heard the argument in the cause, gave no opinion.

Judgment below reversed.