THOMAS MORGAN, appellant, *v.* SAMUEL PETTIT, appellee.

*Appeal from Scott.*

At common law, all wagers are recoverable but such as are prohibited by statute; such as are against sound policy; and such as tend to a breach of the peace, to immorality, or indecency, or injuriously affect the rights of third persons.

The "*Act to prohibit betting on elections,*" applies only to elections held in this State, and does not extend to those made concerning elections to be held in other States.

A bet or wager between two citizens of this State, upon the majority which General Harrison would obtain at the presidential election in the State of Kentucky, is not illegal; and an action can be maintained by the winner to recover the amount of the wager.

*Semble,* That a bet or wager on the result of an election in this State, whether made before or after the election, would be illegal, as against good policy.

THIS cause was heard in the Scott Circuit Court, at the May term, 1841, before the Hon. Samuel D. Lockwood and a jury.

JOSIAH LAMBORN, for the appellant, cited 9 Cowen 169, and note.

JOHN J. HARDIN, for the appellee, cited 3 Term R. 693, and authorities there cited; 10 Johns. 406; 1 Scam. 577; note to 4 Johns. 442; 1 Littell 50.

TREAT, Justice, delivered the opinion of the Court: (1)

An action of *assumpsit* was instituted before a *justice of the peace,* by Pettit against Morgan, and taken by appeal to the Circuit Court, where it was tried by a jury. It was proved on the trial, that in 1840, some months prior to the presidential election, Morgan and one Powell, at Scott county, Illinois, made a bet on the result of the election for President in the State of Kentucky; by the terms

(1) WILSON, Chief Justice, and SCATES, CATON, and SEMPLE, Justices, did not hear the argument in this case, and gave no opinion.

of which, Morgan was to pay Powell $50 if General Harrison received three thousand majority in that State, and if he received less than that majority, Powell was to pay Morgan the like amount. Powell procured one Carpenter to become surety for him, and Pettit became the surety of Morgan. Pettit, as such surety, was to pay Powell in the event that Morgan lost the bet. It was admitted that General Harrison received more than three thousand majority in Kentucky. After the result was known, Pettit paid Powell $50, and brought this suit to recover it. Morgan asked the Court to give several instructions to the jury, which the Court refused, and instructed the jury, "That a bet on an election out of this State, and where the persons making the bet were not electors or voters, is a wager not affected by any of the laws of Illinois, and recoverable by common law; and that if the bet would come within that principle, the plaintiff was entitled to recover." To this decision Morgan excepted. The jury found a verdict for Pettit for $50, and judgment was rendered thereon.

To reverse this judgment, Morgan brings an appeal, and assigns for error the decision of the Court in refusing the instructions asked, and in giving the instruction to the jury.

The law of the case is as fully presented by the instruction which was given, as by those which were refused, and the propriety of the one given will alone be considered.

The "Act to prohibit betting on elections," approved February 15, 1839, (1) provides that any person making any bet or wager on the result of any election to be holden under the laws or Constitution of this State, shall be liable to indictment and punishment. It follows from this provision, that a wager of the kind mentioned in it, would be void, and no recovery could be had by the winning party. The prohibition, however, is confined to wagers on the result of elections to be holden in this State, and does not extend to those made concerning elections to be holden in other States. The present case is not within the provisions of the statute, and unless the wager is illegal at common law, it can be enforced, and Pettit is entitled to recover.

At common law, all wagers were recoverable but such as were prohibited by statute; such as were against sound policy; and such as tended to a breach of the peace, to immorality, or indecency, or injuriously affected the rights of third persons. (2)

A reference to some of the leading decisions in England and this country, will show what cases have been considered as coming within the exceptions to the rule, that wagers are recoverable.

In the case of Jones v. Randall, (3) a wager, whether a decree of the court of chancery would be reversed in the House of Lords, was held to be recoverable.

Da Costa v. Jones, (4) was the case of a wager on the sex of a

(1) Laws of 1839, 109.  (2) 3 Bac. Abr. 335; Chit. on Cont. 395.
(3) Cowper 37.                 (4) Cowper 729.

third person; and it was held void, on the ground that it would lead to an indecent enquiry, grossly affecting the rights and feelings of the third person.

In Allen v. Hearne, (1) a wager between two voters, respecting the election of a member of Parliament in their district, made before the election, was declared to be illegal, as contrary to sound policy.

In Atherfold v. Beard, (2) the Court held a wager respecting the amount of a certain branch of the public revenue, illegal, because it might lead to an improper discussion, and therefore contrary to good policy.

Good v. Elliott, (3) was an action on a wager whether a third person had before a certain day purchased a wagon. Grose, Ashhurst, and Kenyon, Justices, against Buller, Justice, held the wager valid, as not falling within any of the exceptions to the general rule.

In the case of Bunn v. Riker, (4) a bet between two voters, one of whom had voted, on the result of the gubernatorial election, made before the polls had closed, was held to be void, as against good policy.

In Campbell v. Richardson, (5) a bet on the result of a shooting match was declared to be valid, and recoverable at common law.

Rust v. Gott, (6) and Bush v. Keeler, (7) were actions on bets made after the election, but before the canvass was completed and made known, on the result of the election for Governor. The wagers were held to be illegal, because of their tendency to agitate questions concerning the validity of the election, and the right of the party obtaining the certificate of the board of canvassers, to the office.

On the principle of these cases, the bet in question, if on the result of an election in this State, whether made before or after the election, would be illegal, as against good policy. If made before the election, the parties to it would have a direct pecuniary interest in the result, which might control their votes, and induce them to use improper means for the purpose of controlling the election. If made after the election, the same interest might induce an attempt to influence and control the determination of the authority whose duty it is to canvass the votes, and declare who is elected.

The wager in question does not seem to come within any of the exceptions to the general rule, as shown by the authorities referred to. It is made between citizens of this State, residing out of the State where the election is to transpire, and under such circumstances as preclude them from exercising any dangerous or controlling influence over the result. By its terms, it is conceded that General Harrison will obtain the electoral vote of Kentucky, and

(1) 1 Term R. 57.     (2) 2 Term R. 611.     (3) 3 Term R. 693.
(4) 4 Johns. 426.     (5) 10 Johns. 406.     (6) 9 Cowen 169.
(7) 5 Wend. 250.

the only question is as to the extent of his majority.   It gives the parties no interest in the mere question whether the vote of the State is to be given to General Harrison or Mr. Van Buren.   We are of the opinion that the wager in question is recoverable by the common law, and consequently the Court decided correctly in giving the instruction.

It may be a matter of regret, as the English courts have frequently remarked, that wagers of any kind have been sustained; but the law is too well settled for courts now to say, that such wagers as do not fall within the exceptions to the rule, shall not be recovered.   If the law should be otherwise, it is for the legislative, and not the judicial power, to declare it.

The judgment of the Circuit Court is affirmed with costs.

DOUGLASS, Justice, dissented.

*Judgment affirmed.*